The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States. All right, be seated please. All right, it's, uh, this courtroom, I was in here yesterday and it was very warm, and yesterday GSA was working on the building from 7 in the morning. Today, it's still a little warm. I understand they've been working on it. I hope it cools down still a little bit. We'd like to be a little cooler, but if not, don't let it get you mentally hot. All right, we'll hear McEvoy versus Diverse Energy, and Mr. O'Quinn will hear from you. Thank you, Judge Niemeyer. May it please the Court, John O'Quinn on behalf of the appellants. The District Court should have dismissed this action under Rule 19 because it requires the joiner of a party that cannot be joined due to its sovereign immunity. In the immediate infringement of at least two of West Virginia's sovereign interests, from further litigation in its absence over its contractual interest, as well as litigation over its self-governance interests under an exclusively state law regime, those are exactly why this Court has appellate jurisdiction to hear this appeal now. Go back. You used a lot of words there. Go back and tell us why we have jurisdiction. In other words, you understand that the denial of a motion to dismiss, Motion 12C, Motion 12B1, 12B6, all those are not appealable. Well, Judge Niemeyer, as a general problem... The question is, why are you saying that we should hear it now? So, Judge Niemeyer, I agree with you that the denial of a motion to dismiss, the denial of a 12C motion... As a general proposition, I understand you're trying to get an exception, but you used a bunch of long words as to why this is not interlocutory. Sure. I think this falls squarely within the Supreme Court's decisions in two cases that show why it's immediately appealable. The first is the Supreme Court's decision in Puerto Rico Aqueduct, which held that... That's an immunity case. That is an immunity case. That's a sovereign immunity case, and nobody here has alleged sovereign immunity. Well, respectfully, Judge Niemeyer, this is a sovereign immunity case, too, and I mean that... Well, just a minute. Did anybody assert sovereign immunity anywhere, and was sovereign immunity denied anybody? So, Judge Niemeyer, you are right that this is a situation where the sovereign is not presently a party in the case, just like the situation before the Supreme Court in Pimmin. Has anybody asserted sovereign immunity as a defense? West Virginia itself has asserted in its amicus brief that the continued litigation... Well, they're not a party to this case. Well, that's... And they were not below, they didn't try to get in, they didn't ask to get in, they didn't move to intervene. There is nobody below that asserted sovereign immunity that I could see. Now, maybe somewhere hidden in the record you could, but I don't... Judge Niemeyer, you are correct that West Virginia did not participate in the proceedings below. I don't know to what extent West Virginia was aware of the proceedings below. When West Virginia did appear and participated, it appeared in this court, and in this court... It did not appear in this court, either. That's strange. If they thought they didn't know about it, they could say, we didn't know about it, and move to intervene. They haven't done that, either. Well, respectfully, Judge Niemeyer, I think the concern here is just like the one that the Supreme Court addressed in Pimentel. And there, the Supreme Court made clear that, number one, that someone other than the sovereign could raise and advance the argument that there should be dismissal under Rule 19b for the failure to join a sovereign, and that that party could, in the absence of the sovereign, the Supreme Court didn't have to decide whether the sovereign was necessary to be a party in that case, and the court could decide the sovereign immunity interest. Now, to be sure, Pimentel arose because of the posture in which it arose after final judgment. But when you look at the Supreme Court's reasoning in Pimentel, and what it identified as the harm to the sovereign in the sovereign's absence, that is exactly the type of harm that the Supreme Court also identified in Puerto Rico Aqueduct. You would think the sovereign would be the one to raise it, right? Isn't there a standing question? I mean, somebody has to be able to raise it, and be a party to raise it. Two points, Judge Niemeyer. Number one, that line of argument is inconsistent with the Supreme Court in Pimentel. Pimentel made clear that any party could raise the issue of the absent sovereign's interests on appeal. Sure they could, but that doesn't answer the interlocutory question. That means that when you're deciding the Rule 19 motion in this case, not a final judgment, anybody could raise the issue, but the court decided the issue on disagreeing with you and saying they were not either necessary or indispensable. So particularly in light of West Virginia's appearance here in filing an amicus brief— They haven't appeared. I don't think you should use that word. They're on amicus. Particularly in light of West Virginia's amicus brief in this case, I think that to the extent that what you are advocating is a rule where the sovereign would actually need to then go through the motions of purporting to seek intervention for the limited purpose of seeking dismissal, that itself invites an intrusion on a state's sovereign immunity. Because what you are saying is that it is not enough for the sovereign to show up and file a brief as an amicus brief in this court or any other court and say that its sovereign interests are implicated. And they have said so at page 10 of their brief in no uncertain terms. Can I ask you, do you agree that Cohen factors are jurisdictional requirements? I think they would have to be, Judge. Okay, so that means you can't forfeit Cohen factor 1 and 2, right? If they're jurisdictional, they can't be forfeited? I would agree with that. Explain to me why this obviously doesn't flunk Cohen factor 2, because when I read the disputes about the Rule 19 issue, not only are those not completely separate from the merits, they strike me as inextricably tied up in the merits. You're all arguing about what West Virginia law says and what the state has the right to do. All of the arguments about Rule 19 in this case strike me as completely inextricably linked with the merits. So, Judge Huygens, let me start with why I think that they legally are separate. We can talk about whether they're factually separate or not in a second. I think as a legal matter, the Supreme Court addressed this issue directly in Mitchell v. Forsyth. That's at 472 U.S., particularly at page 529. And there, Mitchell specifically addressed the question of the overlap between, in that case, it was a claim of qualified immunity and the potential merits of the case. And the court said, quote, in holding claims of immunity to be appealable under the collateral order doctrine, the court has recognized that a question of immunity is separate from the merits of the underlying action for purposes of the Cohen test, even though a reviewing court must consider plaintiff's factual allegations in resolving the immunity issue. And if you look, again, more specifically... But that was followed up with Johnson, right? And Johnson then said if there are factual questions that are inextricably intertwined, then we have no jurisdiction. So I think with respect to questions of immunity, if you look at, for example, a footnote 10 of the Mitchell case, Mitchell itself considered and addressed the dissent's argument with respect to that very issue and said that if you said that any factual overlap meant that you couldn't immediately appeal an immunity order, it would mean that no immunity order could be immediately appealable. This, of course, all predates Puerto Rico Aqueduct. In Puerto Rico Aqueduct, the court was confronted with the question of whether or not they should decide for themselves the dismissal or whether or not because there were factual questions of whether the entity actually was a sovereign entity that could assert sovereign immunity, did that mean it was not immediately appealable? And the Supreme Court said, no, it is immediately appealable, even though there are factual issues that would need to be resolved. Okay, so let me ask you another question about the collateral order doctrine. The Supreme Court has said over and over again, we do this category of order by category of order. We don't do under the facts and circumstances of this case, is this a collateral order? I mean, my immediate assumption then is the category of orders is Rule 19. I suspect you're going to tell me that you don't think the category is Rule 19, but if it's not Rule 19, what is the category? It can't be that under the facts and circumstances of this case, you get to appeal. So what is the category of orders you think satisfies Cohen? Judge Hayden, certainly I'm not arguing that it's Rule 19 orders in the same way I'm not arguing that it's Rule 12 orders in the same way that under Puerto Rico Aqueduct, sovereign immunity can be asserted on a motion to dismiss, on a motion for pleadings. It could be asserted in the Rule 19 context. The category of order here, and I think there are two that are implicated. You only have to decide one. One is where there's denied a dismissal based on the non-frivolous assertion, and I'm taking non-frivolous from Rule 19, the non-frivolous assertion of a sovereign's interest in its own contracts. Who asserted that? The only person that could assert that would be the sovereign. And the sovereign, I keep getting back to this. I mean, you have a private lawsuit here between McAvoy and Diversified, and clearly the state has a big role in it, but if they thought that their role was being infringed, their sovereignty was being infringed, they could have stepped in. But the truth of the matter is these two parties have no sovereign immunity, so they didn't assert it. So Judge Niemeyer, very respectfully, if you look at Pimentel, this notion that we— Was that the Philippines case? It is, Your Honor. Yeah, but they were parties. That's a totally different issue. We're talking about an interlocutory. There was a final judgment there, and they were the parties. So respectfully, Judge Niemeyer, they were not. This case involves a case where the state is not a party, there is no sovereign, and there was no sovereign immunity defense. So Judge Niemeyer, respectfully, if you go back and look at what transpired in Pimentel, you are right that the Philippines was originally a party in the case. It was then dismissed because of its assertion of sovereign immunity. It then asserted as a non— And it went to final judgment, didn't it? It was after final judgment. I'm not at all trying to suggest that it's not. My very, very simple proposition here is that Puerto Rico Aqueduct plus Pimentel is what gives you immediate appellate jurisdiction here. Puerto Rico is—the simple proposition is the denial of sovereign immunity is immediately appealable. That's right. And that's not the issue here. The issue here is whether a Rule 19 order is immediately appealable. I could not fundamentally disagree more, and neither could the Supreme Court. It specifically said a, quote, and over its objection, end quote. That's page 868 of the Pimentel case, and it goes on at page 864 to say, quote, Can I ask you—so I think we could go back and forth on Pimentel all day, and we're not going to resolve this, so let me ask you a different question. Do you know of any case in which any court has said that the denial of a Rule 19 motion under circumstances like this is immediately appealable? Judge Hytens, I'm not aware of any case that has dealt with these circumstances and come out one way or the other. So that's a no? That's a no. Obviously, there's no shortage of cases in which courts have found that the denial of a sovereign immunity interest is immediately appealable. Obviously, the typical posture in which that arises is the one that Judge Niemeyer was talking about, where it's the sovereign itself that is asserting it. Pimentel makes clear that someone else can assert it as well. And the only—I think there would be a fair question of whether or not the sovereign agrees with that position, and we know indisputably the answer to that question in this case due to West Virginia's amicus brief. How is this case different from Aalto? This case is different—I mean, Aalto, respectfully, Judge Hytens, is— Well, you might tell me it's wrong, but is it different from Aalto, or is it just wrong? I think it's confused, and I'm not sure—so there are two different issues in Aalto, right? There's one where the court specifically said that the tribe—I'm trying to remember exactly the fact pattern— where they recognized that there would be an appellate right immediately if the tribe sought intervention, and that was denied. And they say that very, very clearly in the opinion. Then at the very end of the opinion, which I think is the part that you're asking me about, they suggest that in that case the denial of the Rule 19 was not appealable, but I think the reasoning there is more one of ripeness than anything else because what the district court had done in Aalto is it had allowed intervention for the limited purposes of seeking dismissal as to Claims 1, 2, and 3 in that case, but it had basically deferred with respect to Claims 4 and 5. It said, I'm not deciding anything. I think what's fundamentally different about that than the situation that you have here is the court wasn't proceeding to then adjudicate the merits of Claims 4 and 5 in the absence of the sovereign. And so I think the best way to read Aalto is the Ninth Circuit was saying that issue is not ripe before us because there hasn't been the denial of intervention, and there is no intrusion on, in that case, the tribe's sovereignty because nothing's happened in the case. And in fact, if you look back, the district court in that case had sort of suggested it doubted that the case could proceed without the tribe. And so I think that if you look at what was happening in Aalto, it is consistent with what I'm arguing. I don't disagree that there is some language in Aalto that cuts in both directions, and that part is frankly just confusing to me. So coming back to the core issue in this case, number one, is there a sovereign interest here that is asserted? This court's decision in Yashchenko, and I see them in my rebuttal, one final thought, and then I'm happy to answer any questions, but otherwise we'll yield the podium. Yashchenko v. Harris, this court's decision made clear that the adjudication of claims that threatened to impair a sovereign's contractual interests or its sovereign capacity to negotiate contracts and in general to self-govern, in that case the reservation, would be a violation of Rule 19. Because those are recognized sovereign interests, because, I'm sorry, Judge Rushing. Can those be fixed after a final judgment? If you appealed, couldn't we fix all of that by just undoing the district court's judgment? So, Judge Rushing, that was the argument, and there was a circuit split leading up to the Supreme Court's decision in Puerto Rico Aqueduct, and that was the argument was that, look, at the end of the case, if you're right, this is an entity to which sovereign immunity applies, you can fix that. But here there's no entity to which sovereign immunity applies currently in the case. We're not talking about a right not to be a part of the case. West Virginia is not a part of the case right now. We're talking about, from what I can tell in your briefs, everything you point to is that West Virginia's, this department's, will be trampled if the district court rules in certain ways and does certain things. But we can undo all those rulings on an appeal from a final judgment. Well, respectfully, I think they're being trampled on at present. I think that the Supreme Court in Pimentel said that the consideration of the merits is itself, that is the very act of it being litigated, is itself an infringement on sovereign immunity. Yeah, but the district court thought that there are forms of relief. There's a broad range of relief at issue here. And the district court thought that it could effect relief without effecting, without impairing any governmental interest. And it seems to me, wouldn't it be more fruitful to have us know where the court ends up on relief, if it grants any relief? So, Judge Niemeyer, you already have the district court, and this is a joint appendix 282, specifically saying, it is the finding of this court that the consent order is simply an exercise of West Virginia DEP's prosecutorial discretion. So you already have the adjudication over the meaning and interpretation of a contract in the absence of the contractual counterparty. That is what this court in the Gunver case said that you cannot do under Rule 19. Aren't there common law claims here, too? So, Judge Niemeyer, that... Are there common law claims here? They are trying to assert common law claims. They are arguing that their duty comes from the statutory provision 22619, which is entrusted to the administration of West Virginia DEP, and it has statutory authority to extend those deadlines. My modest point was simply to say that when you have, and you have it, it is plain as day on J282, when you have the district court engaged in interpreting a sovereign's contract in the sovereign's absence, that is exactly what the Supreme Court said that you cannot do in Pimentel, and because, why? Because it infringes their sovereign immunity interests, and under Puerto Rico Aqueduct, that means that that is an immediately appealable decision. All right. Thank you, Judge Niemeyer. You have some rebuttal. Right. All right, Ms. Bruckner. Good morning. May it please the court, Leslie Bruckner for the plaintiffs. Judge Rushing, I think you hit the nail on the head in your question to my learned friend when you said, you asked him the question, can't any harm that DEP might arguably suffer from this lawsuit be effectively undone on review from a final order? And the answer to that is unquestionably yes. All of the harms that DEP identifies in its amicus brief flow exclusively from any final order that the judge might issue in this case. Now, we disagree with DEP's characterization of that harm, but even taking DEP's amicus brief at face value, any harm to it can be undone on review of a final judgment in this case, and that's one of two reasons why, Judge Heitens, I agree with you, this case flunks the three-part test for determining whether a non-final order can be subject to an interlocutory appeal under Cohen v. Beneficial. One argument is the argument I was just addressing, which is that under the third prong of that test, there can be no interlocutory appeal of a non-final order if the decision can be effectively reviewed after entry of a final decision in this case, and that is true, and Judge Heitens, you're also correct, that the reason that this is not properly subject to the collateral order doctrine is because the issue of whether or not DEP is a necessary party is inextricably linked with the merits of the case. Do we have to, you know, the Supreme Court's told us we have to make decisions about collateral order doctrine as a categorical matter, and on this prong two question, would we have to say that, would we have to fashion that as some sort of categorical rule? I mean, here it might just be tied up with the merits because that's how you two were arguing it. You all just can't stay away from the merits, but as a legal matter, it doesn't seem to me that it would have to be tied together to the merits. I think that's correct. I think that the court, I think we're undoubtedly correct that this case does not fit within the collateral order doctrine, even if you just look at prong three, because it's very, very clear that decisions like this can be effectively reviewed on appeal, and that's why they're not properly the subject of interlocutory appeal. Judge Heitens, I agreed with your question where you asked my learned friend, is there any case out there that you can identify like this one where the denial of a motion to add a necessary party has been the subject of an interlocutory appeal, and he properly answered, no, there is no such decision, and there's a good reason why, because such orders can, by their very nature, be effectively reviewed on appeal. This is a purely, it's been bothering me ever since I saw this in the various questions, what is the argument that this case is governed by Alabama law? I literally, when I encountered that, I was like, I do not understand what that argument would be. So diversified is an Alabama corporation. That's cool. I don't see why that makes this case governed by Alabama law. I beg your pardon? And in addition, my understanding is that as a matter of contract between diversified and EQT, there's a specification that Alabama law would apply, and therefore, that's the basis for us asserting that the transfer of funds from diversified to EQT can and must be voided under the Alabama transfer law. It's an excellent question. I asked myself that question. Why is Alabama law here, and that is the answer. Judge Niemeyer, I'd like to also get back to some of your first questions in the case. You are correct. Sovereign immunity has not been denied to any party in this case, and that is what distinguishes all the cases that diversified and EQT cite. They don't cite a single case holding that the denial of a motion to add a necessary party under Rule 19 can be the subject of an immediate appeal. All the cases that they cite involve instances where a party claiming immunity is being forced into litigation in the district court against its will. And in that kind of a circumstance, of course it makes sense for there to be an immediate appeal, because otherwise the milk is spilled, the genie is out of the bottle, the immunity is infringed on just by virtue of having to participate in the litigation. Obviously that's not true here. As Your Honor noted, Judge Niemeyer, DEP hasn't even appeared in this case. It's merely filed an amicus brief. I very strongly disagree with Mr. O'Quinn's assertion that Pemintel governs here. In Pemintel, all the parties agreed that the Republic of the Philippines was a necessary party under Rule 19A. The only question in the case was whether or not the case needed to be dismissed on the grounds that, as a sovereign, that entity was indispensable. What the Ninth Circuit's decision makes clear in Alto v. Black, and also the Tenth Circuit and the Crow case, both cited on our briefs, is that these issues of indispensability have no relevance at the Rule 19 stage. Here the only question is whether WVDEP is a necessary party. And as to that, its status as a sovereign entity is immaterial. The only question is whether or not any judgment, whether or not the order denying it necessary party status can be effectively reviewed on appeal. And here it can. Now I think that in recognition of the fact that no case holds to the contrary and holds in their favor, what defendants are trying to argue here is that the mere fact of this litigation proceeding without DEP so badly infringes on the sovereign rights of the DEP that it justifies an extraordinary exception to the narrow rule set forth in Cohen v. Beneficial. Specifically, diversified in EQT, but not DEP itself, claim that... If I understand correctly, and it's gotten a little complex in this regard, there are really two theories sort of colliding here or coming close together, and I think Mr. O'Quinn is sort of invoking them both. One is sovereign immunity is appealable, categorically. If somebody asserts sovereign immunity to deny it, it can be appealed. The other question is collateral order. Now sovereign immunity may be categorically a collateral order, but I think he relies on the fact that because it's a sovereign immunity issue, it's appealable under Puerto Rico. And so I think he's blending the two and saying when you have a Rule 19 that denies sovereign immunity, it's appealable. I do recognize the problem is no one in the case has asserted sovereign immunity, and the state hasn't indicated that it wants to assert it. This is something unwaverable, and they may wish to have it litigated, but we haven't heard from them. They refused to appear, and they didn't seek to intervene here, and clearly they would have a right to assert sovereign immunity, but they would first have to be admitted into the case and then assert it, and that never happened. And I gather that's where your point is, that there's no case to say a sovereign can't be admitted under a necessary party. Sovereign may then be able to get out or may be indispensable, in which case the whole case may end with the assertion of it. But those are further steps down the road, it seems to me. Maybe I'm missing something. You're not missing anything, Your Honor. You're exactly right. And the reason that the Pimentel case has no bearing here, again, is that that case arose after the issuance of a final order holding that the Republicans of the Philippines was an indispensable party. If we've gotten to the point of a final order in this case, then at that point the defendants would have a right to appeal the district court's ruling that DEP is not a necessary party. But we're not there yet. There's no exceptional reason justifying this court creating an extraordinary exception to the collateral order general rule against allowing interlocutory appeals of non-final orders, and there's no reason to create that in this case. So unless there are any further questions, that concludes my remarks. All right. Thank you. Thank you. Mr. Quinn. Oh, Quinn. Thank you, Judge Niemeyer. Several responses. First, as Your Honor alluded to, our position is that West Virginia's sovereign interests and, indeed, its sovereign immunity are being impinged right now. That is, that the harm to its what are recognized as dignitary interests Well, there's no judgment in the case. And the court has before it a broad range of claims for relief, including common law claims, trusts, all kinds of remedies, and some that are linked directly to that might challenge the DEP's consent order in this case. I sense that the district court is going to duck that side of the case here, but we haven't heard all that. And depending on what would be ended up the final judgment, we would have a good picture then to decide whether sovereign immunity was impinged. But the strangeness of this case is that if there is the state did not want to waive and did not want to have this decided in the court, it could clearly have intervened and could clearly have asserted itself. It could have even written a letter to the judge, but none of this happened. We have two private parties anticipating what the state would want, but the state never expressed itself to the district court, and the district court decided a Rule 19 motion based on the fact that it didn't believe the state was absolutely necessary to grant relief that was requested, part of the relief. We don't know where that's going, and I gather what discovery is ongoing right now. It is, Judge Neimeyer. And is there a trial date scheduled? Next year. Next year. All right. So, Judge Neimeyer, I understand your position. Respectfully, I'd point you to JA 282 and the fact that the district court has felt the need to already engage in interpreting West Virginia's contract in its absence. That has already happened. That's not speculation about what might happen. You are right. It is our position that there's nothing else that can happen in this case that isn't going to implement these dignitaries. Well, nothing has led to a judgment. Nothing's led to a relief. And, again, I understand it wasn't in the context of Rule 19, but when the Supreme Court's reasoning in Pimentel talks about the infringement on sovereign immunity, even in the course of litigation from, quote, assuming, that's the Supreme Court's word, where a sovereign substantial interest is determined or at least assumed by a district court in the sovereign's absence. Can I just ask you what Pimentel, like the fundamental distinction that strikes you about Pimentel and just give you a chance to respond. So my understanding is in Pimentel there's a pot of money, and different people all claim that money is their money, right? That's correct. And one of the entities that claims it's their money is the Republic of the Philippines. That's right. And so I totally understand what the court's saying there. It's like, but the Philippines claims this money is theirs. How can you adjudicate who this money belongs to without the Philippines when the Philippines claims that the money is the Philippines' money? We don't have it. And then I guess the other thing is the Philippines' other claim was, with all due respect to U.S. courts, it's a Filipino court that should be deciding whose money this is. So it's our money, and it should be decided in our courts. And so how can you have this proceeding without us? Both of those feel very different to me right here. It's not like there's money that the state of West Virginia claims belongs to it, and that we're going to adjudicate as between two parties. So why isn't that a pretty big difference between this case and Pimentel? So, Judge Hayden, obviously it's a factual difference. I don't think it's a difference that is dispositive. But why don't we have to read the language the court has in light of the facts before the court, which is like, how can you possibly adjudicate who this money belongs to in the absence of the Philippines, when the Philippines claims that it's the Philippines' money? Well, I think that the courts' resort to significant notions of comedy, of dignity, and so forth, suggests that it believes that more is in play than simply money. In this case, though, I would say, at a bare minimum, what's in play is the sovereign's contract. And if you look at this court's decision in Gunvor, that is a classic Rule 19a. The district court's wrong under Rule 19a. The only question is whether you can review it now. And I think that when you put Pimentel and Puerto Rico Aqueduct together, they tell you why. Now, to the extent that this court disagrees and thinks that the reason that you can't is because even though it has filed an amicus brief in which it didn't even have to file a motion under the federal rules because it's entitled to tell you its position, even though it's told you its position, you think that despite its sovereign dignity, it has to do more. It would be helpful if the opinion said what that more is. In other words, does it have to seek to intervene below? Is it enough that, Judge Niemeyer, that they file, you know, there is no mechanism for filing amicus briefs in the district court, that they seek leave to file one, that they file a letter with the court. Would that be sufficient in order for it to be immediately Let me ask you, is there evidence that the state knew of this proceeding going on? Judge Niemeyer, I don't think there's anything in the record that addresses one way or the other whether the state knew this proceeding was going on. Was the agency being consulted or was discovery taken of the agency? No discovery had been taken of the agency. I do think the discovery of the agency is anticipated if this case proceeds. Well, I understand, but I'm just a little puzzled by, if this were as intense an invasion of West Virginia's Department's issues, why they wouldn't say something? And why they wouldn't come in? I mean, it seems to me that these are landowners that are trying to restore their land with respect to wells that are presumptively abandoned under state law. After 12 months, they're... And so they want their lands restored or the wells plugged and they invoke common law remedies and a bunch of other remedies. They want to undo the contract, of course, but they maybe can't do that. I don't know. But the whole point is the district judge is looking at all this. All these arguments were presented, weren't they? Yes, the arguments were presented by us. And the district court basically said, we can get along and I can grant relief. I don't need to interfere with the state's interest in this. And the state actually has the interest in plugging the wells too. The contract even has a scheme for plugging the wells, 50 a year, I guess. But there's a public policy to plug abandoned wells and they're presumed abandoned if they have no activities for 12 months. And so here these people want their wells. They say the deal between the diversified and EQT would take 200 years to plug the wells. So there's a lot packed into your question, Judge Niemeyer. I know, but my whole point is we don't know where this is going. And there are several avenues that don't steer into the sovereign interest. That's my point. Well, there are two things that we know for certain. Number one, the district court has to because it already has made an interpretation of this contract and it's done so in West Virginia's absence. It's not going to grant any relief on the contract. Whether it does or doesn't is beside the point. It's irrelevant then. Well, no. It would be just dictum. Well, but that then, again, the mere assumption of what those contractual interests are implicates West Virginia's interests. And if you look at pages four and five of its amicus briefs, it tells you its interest is not simply in having wells plugged. It also has an interest in having wells. Oh, it's claimed a broad range of interests. No questions. It's claimed a broad range of interests. My only point is the district court was aware of this and thought that it did not need the state present with respect to the relief that's potentially claimed. With the court's indulgence, the last point I'll make, Judge Zehmeyer, in response to one of the questions that you asked is, what do you make of the fact that the state did not file something in the district court and the fact that it has here? And I think that the court will find that that's a very common occurrence. It's very common that putatively interested parties, that sovereigns, that states will not participate in a case that's in the district court because it may feel just fine on how it's being litigated. But when something has then happened adverse to its interest, i.e. the case wasn't dismissed, the state immediately appeared here taking the extraordinary step of filing its amicus brief before anything else in this case was filed, before any other brief in this case was filed. So that, I think, knowing the state's interests, you do have jurisdiction under the collateral order doctrine, you do have jurisdiction under the mandamus standards as well, and we would ask that the court reverse and remand. To the extent that the court believes that it doesn't currently have jurisdiction, but that what West Virginia might do on remand would be relevant to that, it would certainly be helpful to get guidance from this court. All right. Thank you. Thank you, Judge Zehmeyer. Actually, this case is going to keep both of you employed, I think, for a little while. We'll come down and greet counsel and then proceed on to the next case.
judges: Paul V. Niemeyer, Allison J. Rushing, Toby J. Heytens